IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Criminal Case No. 19-cr-264-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **TIMOTHY SPIKES**,
2. **SYLVIA MONTOYA**,

    Defendants.

## ORDER DENYING DEFENDANTS' JOINT MOTION FOR RECONSIDERATION

The Government charges Timothy Spikes with: (1) one count of possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A)(i); (2) one count of possession with intent to distribute a mixture or substance containing a detectable amount of cocaine base, a Schedule II controlled substance, 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); (3) one count of possession with intent to distribute a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); (4) one count of possession of a firearm / ammunition by a prohibited person, 18 U.S.C. § 922(g)(1); (5) one count of possession with intent to distribute 28 grams or more of cocaine base, a Schedule II controlled substance, 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii); (6) one count of possession with intent to distribute 5 grams or more methamphetamine (actual), a Schedule II controlled substance, 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii); (7) one

count of maintaining a drug premises, 21 U.S.C. § 856(a)(1), and (8) one count of possession with intent to distribute a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  (ECF No. 1.)

The Government also charges Sylvia Montoya with: (1) one count of possession with intent to distribute 28 grams or more of cocaine base, a Schedule II controlled substance, 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii); (2) one count of possession with intent to distribute 5 grams or more methamphetamine (actual), a Schedule II controlled substance, 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii); and (3) one count of maintaining a drug premises, 21 U.S.C. § 856(a)(1).  (*Id.*)

On April 20, 2020, the Defendants filed the Joint Motion to Dismiss Indictment Or In The Alternative To Suppress Evidence and Request for Oral Argument ("Motion to Suppress").  (ECF No. 68.)  The Court held evidentiary hearings on the Motion to Suppress on December 9, 2020 and January 5, 2021.  (ECF Nos. 101, 104.)

On January 29, 2021, Defendants filed the Joint Motion Requesting a *Franks* Hearing.  (ECF No. 108.)

On May 5, 2021, the Court issued the Order Granting in Part and Denying in Part Defendants' Joint Motion to Dismiss Indictment or in the Alternative to Suppress Evidence and Request for Oral Argument and Denying Defendants' Joint Motion Requesting a *Franks* Hearing ("Prior Order").  (ECF No. 113.)  The Court presumes familiarity with the Prior Order.

This matter is now before the Court on Defendants' Joint Motion for Reconsideration ("Motion"). (ECF No. 124.) The Government responded on June 30, 2021. (ECF No. 128.) For the reasons stated below, the Motion is denied.

## I. LEGAL STANDARDS

In a criminal case,

> [a] motion to reconsider may be granted when the court has misapprehended the facts, a party's position, or the law. Specific grounds include: (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice.

*United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014) (internal quotation marks and citations omitted). However, a motion for reconsideration "should not be used to revisit issues already addressed or advance arguments that could have been raised earlier." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000); *Pack v. Hickey*, 776 F. App'x 549, 558 (10th Cir. 2019) (recognizing that a motion for reconsideration is not intended as an opportunity to rehash arguments).

## II. ANALYSIS

Defendants argue that "[t]he Court erred when it denied Defendants' request for suppression of evidence seized as a result of law enforcement's March 6, 2019[ ] search of the 2019 Charger as Officer Ponich unlawfully prolonged the traffic stop and K-9 Puck is unreliable and did alert to the presence of narcotics." (ECF No. 124 at 2.) The Court will consider each argument below.

## A. Length of the March 6, 2019 Traffic Stop

Defendants contend that the Court's erred in concluding that Officer Ponich's actions during the traffic stop were reasonably related to the mission of the traffic stop because he admitted during the January 5, 2021 evidentiary hearing that he was holding Spikes until a K-9 was present at the scene. (ECF No. 124 at 3.)

The Government responds that the traffic stop was not unlawfully prolonged because, as Officer Ponich explained during the January 5, 2021 evidentiary hearing, he had to do certain things before issuing a ticket to Spikes, including having a tint meter on the scene to measure the tint on the 2019 Charger's windows. (ECF No. 128 at 4.) According to the Government, Sergeant Carelock's arrival on scene with the tint meter is "highly relevant to the [D]efendants' challenge that the traffic stop was unlawfully prolonged." (*Id.*) The Court agrees.

Although Defendants cherry-pick a portion of Officer Ponich's testimony to create the impression that Spikes was held at the scene of the traffic stop *solely* to wait for K-9 Puck, Officer Ponich also testified that: (1) he informed Spikes that he was in violation of tint, (2) he did not have a tint meter in his car, and (3) he had certain things to do before issuing Spikes a ticket.[1] (*See* ECF No. 124-1 at 47–50.) Moreover, if—as Defendants contend—Officer Ponich was solely delaying the traffic stop to wait for K-9 Puck, there

---

[1] Defendants cite *United States v. Mayville*, 955 F.3d 825, 831 (10th Cir. 2020) for the proposition that "officers may not undertake safety precautions for the purpose of lengthening the stop to allow for investigation of unrelated criminal activity." There is no reasonable suggestion, however, that Officer Ponich did not diligently pursue the mission of the traffic stop. Had Officer Ponich not asked Sergeant Carelock to bring a tint meter to the scene before writing Spikes a municipal ticket summons, it is possible—if not likely—that the traffic violation would have been thrown out for lack of evidence that the 2019 Charger's windows were actually unlawfully tinted.

would have been no need for Sergeant Carelock to actually arrive at the scene with the tint meter.[2] But Sergeant Carelock did in fact bring a tint meter to the scene and determined that the front passenger window of the 2019 Charger allowed only 5% of light transmission. (ECF No. 68 at 3.) Moreover, Spikes was released from the scene *only after* Officer Ponich issued Spikes a municipal ticket summons for unlawful window tinting, *i.e.*, when Officer Ponich completed the purpose of the traffic stop. (*Id.* at 4.)

Thus, the Court concludes that it did not clearly err by determining that the March 6, 2019 traffic stop was not unnecessarily prolonged and instead lasted only as long as necessary to confirm the suspicion that justified the initial stop of the 2019 Charger. The Court therefore denies this portion of the Motion.

**B.    K-9 Puck's Sniff**

Defendants also argue that the Court erred by: (1) determining that K-9 Puck was reliable, and (2) "misapprehend[ing] the facts in reviewing the video evidence of the traffic stop, in combination with [Investigator] Dortch's testimony, police report, and Dr. Cablk's testimony" by determining that K-9 Puck alerted to the odor of narcotics in the 2019 Charger. (ECF No. 124 at 4–7.)

Critically, however, Defendants fail to show that the Court fundamentally misapprehended any of the arguments developed in the Motion to Suppress or testimony from evidentiary hearings, or otherwise clearly erred in its analysis, such that they would

---

[2] Investigator Dortch had already deployed K-9 Puck when Sergeant Carelock arrived on scene with the tint meter. (*See* ECF No. 68-5.)

5

suffer manifest injustice without the requested relief.[3]  Nor do they establish any intervening change in the controlling law or come forward with any new evidence previously unavailable to them at the time they filed their Motion to Suppress.

The Tenth Circuit has made it abundantly clear that a motion for reconsideration is not a vehicle for a losing party to revisit issues already addressed.  *See Servants of the Paraclete*, 204 F.3d at 1012.  Because Defendants merely rehash rejected arguments that were raised—and rejected—by the Court, this portion of the Motion is denied.

### III.  CONCLUSION

For the reasons set forth above, the Court ORDERS that Defendants' Joint Motion for Reconsideration (ECF No. 124) is DENIED.

Dated this 12th day of July, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge

---

[3] The Court notes that in challenging K-9 Puck's reliability, Defendants do not even attempt to explain away the fact that K-9 Puck has never given a false alert during his 721 hours of training.  (ECF No. 113 at 18.)  The Court further notes that it made the determination that K-9 Puck alerted to the odor of narcotics after carefully considering all of the evidence, including viewing the videos of the traffic stop.  (*Id.* at 21–24.)