IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 1:19-cr-00264-WJM–1 &

1:19-cr-00264-WJM-2

UNITED STATES OF AMERICA,

       Plaintiff,

v.

1. **Timothy Spikes**,

2. **Sylvia Montoya**

       Defendants.

**DEFENDANTS' JOINT REPLY TO THE GOVERNMENT'S RESPONSE TO DEFENDANTS' JOINT MOTION FOR FED. R. CRIM. P.41(g) RETURN OF INFORMATION & REQUEST FOR LEAVE TO FILE ANY RELATED MOTIONS OUT OF TIME FOR GOOD CAUSE**

**COMES NOW**, Defendant(s) Sylvia Montoya ("Montoya"), Timothy Spikes ("Spikes"), through his/her attorneys, Benjamin Hartford and Jill Jackson, respectfully submits Defendants' Joint Reply to the Government's Response, (ECF #134), to Defendants' Joint Motion for Fed. R. Crim. P.41(g) Return of Information and Request for Leave to File Any Related Motions Out of Time for Good Cause (ECF #132), in support thereof, Defendants' state the following:

1. Mr. Hartford, counsel for Spikes, had a confidential conversation with his client prior to October 16, 2020. During that conversation, Mr. Hartford provided an admonition that identified himself as Mr. Spikes attorney, recited his attorney registration number, and stated that the

1

conversation is not subject to monitoring and that any monitoring should cease and desist. In the weeks preceding Off. Dortch submitted a supplemental report that outlines specifically inconsistencies in an evidence log where Inv. Wheelis had marked out the cells on the log and Off. Dortch had placed an additional entry within that log, which is precisely the information that Mr. Hartford communicated with Mr. Spikes during their attorney-client phone conversations.

2. Mr. Spikes and Mr. Hartford had multiple and lengthy conversations about the specific significance of this evidence log and spent time discussing it with defense team of investigators. Specifically, Mr. Hartford discussed the significance of the report and asked them about the standard procedure to mark the evidence log in that way. After receiving Off. Dortch's supplemental report, Mr. Hartford also discussed with investigators the probability and likelihood of Off. Dortch writing his supplement discussing and explaining the very issue Mr. Spikes and Mr. Hartford had discussed at length just days and weeks prior to the report being issued.

3. It is the Defense's belief that based on the content and proximity of the conversation and content of Off. Dortch's supplemental report, specifically addressing issues only raised and discussed during private confidential communications between attorney and client that it is more probable than not that Off. Dortch, or members of law enforcement in conjunction provided Off. Dortch this privileged information that was never raised by motion, or mentioned previously by motion, or disclosed at any time to the government and was miraculously without prompting or knowledge than volunteered and explained by Off. Dortch.

4. Additionally, Spikes informed Mr. Harford that he filed an internal grievance with GEO after being informed by Major Garcia, an employee at GEO, that officers from DPD and APD were listening to his "attorney conversations." Mr. Spikes was then told by another GEO employee,

Ms. Shook, that she "wouldn't lie to cover up the bad acts of others if questioned by authorities." This grievance, upon information and belief, has led to the termination of at least four employees for violations associated with Mr. Spikes claim of violation of his attorney-client privilege. One of those terminated is the wife of the lead investigator of the DPD's case Sgt. Foster, who the Defense previously alleged said "You beat me today, but I'll get you one way or another I never lose" when confronting Mr. Spikes after his Denver County case was dismissed.

5. Spikes also informed Mr. Hartford that Dawn Ceja, Assistant Facility Administrator at GEO, revealed to him that his attorney-calls were being monitored and accessed, and that her GEO credentials were being used to gain unauthorized access to those calls. This information is consistent with Ceja's statements to Agent Cole, in the ROI provided to Defense, indicating that "the internal investigation revealed Spikes calls had been accessed and that the access appeared to be unauthorized."

6. The Defense is requesting the ability to subpoena documents, specifically the internal investigation and related documents that was originally instigated by a grievance filed by Spikes after speaking with Major Garcia. The defense would also request the ability to conduct sworn criminal depositions of GEO employees past and present. Finally, the Defense would ask for the ability to do a forensic analysis of call logs digital files and email communications of various involved GEO employees both past and present including Dawn Ceja, Rene Shook, Sandra Minker, Brigitte Dolan, and Sgt. Foster's wife.

7. The defense believes they have established a nexus and that this information is crucial in the Defendants' criminal case as having this privileged information would directly inform involved law enforcement to the areas of inquiry and the nature and specifics of questioning the Defense

intended. This would absolutely impact the credibility assessment this Court made of these officers on important matters of suppression.

8. In *United States v. Carter*, the United States District Court, D. Kansas, addressed a similar issue regarding the implication of the Sixth Amendment Right to Counsel and the Governments possession of soundless video recordings of attorney visitation rooms, and audio recordings of privileged attorney-client communications at Corrections Corporation of America ("CCA"), a private detention facility in Leavenworth, Kansas. 429 F. Supp. 3d 788 (D. Kan. 2019).

9. The court in *Carter* conducted multiple evidentiary hearings, including an appointment and investigation by a Special Master, after the Office of the Federal Public Defender intervened, filing motions for return of property alleging violations of Sixth Amendment Rights and moved to dismiss the indictment. The court granted the defense motions for return of property and dismissal of the indictment, finding, in relevant part, that the record was insufficient to determine whether Government became privy to attorney-client communications through purposeful intrusion into the attorney-client relationship; and had no legitimate law-enforcement purpose in broadly acquiring video recordings. *United States v. Carter*, 429 F. Supp. 3d 788, 904 (D. Kan. 2019).

10. Here, while the Defense is not alleging the USAO had possession or access to these calls, however the breach by law enforcement certainly engenders the same review and relief. Furthermore, the *Carter* case involved a significant number of attorney-client recordings, involving multiple attorneys and their respective clients, it is significant and related to this case as the *Carter* court laid a framework to proceed when similar issues arise.

11. Counsel is unaware of any specific case law, on point, directly addressing the issue of standing to challenge the Sixth Amendment violations as it relates to relief under Rule 41(g) of a co-defendant. However, both Defendants suffer identical violations of the attorney-client privilege, based on the assessment of credibility of officer witnesses, who accessed the calls, and will testify against both Defendants similarly, and the content of the calls (i.e., the documents discussed and reviewed, reaction to those documents, any motion and trial strategies discussed, including any notes taken by client and counsel are open to government inspection and review).

12. Moreover, undersigned counsel conferred with AUSA Rangel, regarding her position. The prosecution does not oppose the Defenses' request seeking information from GEO as it relates to the pertinent attorney-client calls in this case, however this non-opposition does not mean that the government changes its position from that in its response (ECF No. 134), concedes that this information is related or relevant to the federal prosecution, or that the Court has jurisdiction. The Prosecutions' position is reflective of their effort to resolve this matter in a reasonable, responsible, and expeditious manner.

**WHEREFORE**, Defendant(s) Sylvia Montoya ("Montoya"), Timothy Spikes ("Spikes"), through his/her attorneys, Benjamin Hartford and Jill Jackson, respectfully submits Defendants' Joint Reply to the Government's Response to Defendants' Joint Motion for Fed. R. Crim. P.41(g) Return of Information and Request for Leave to File Any Related Motions Out of Time for Good Cause.

*/S/ Benjamin W. Hartford*
Benjamin W. Hartford, Esq.
Law Office of Benjamin Hartford LLC.
650 S Cherry Street Ste 1225

Denver CO 80246
Phone: 303.991.5757
Fax 303.974.3802
E-mail: ben@bhartfordlaw.com
*Attorney for Tim Spikes*

*/S/ Jill M Jackson*
Jill M Jackson #44517
Law Office of Jill M Jackson
650 S Cherry Street Ste 1225
Denver CO 80246
Phone: (303) 818-7209
E-mail: Jill@jilljacksonlaw.com
*Attorney for Montoya*

# CERTIFICATE OF SERVICE

      I hereby certify that on this 20th day of July 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Celeste.Rangel@usdoj.gov


*/S/ Jill M Jackson*
Jill M Jackson #44517
Law Office of Jill M Jackson
650 S Cherry Street Ste 1225
Denver CO 80246
Phone: (303) 818-7209
E-mail: Jill@jilljacksonlaw.com