**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 19-cr-264-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **TIMOTHY SPIKES**,
2. **SYLVIA MONTOYA**,

    Defendants.

---

**ORDER DENYING DEFENDANTS' JOINT MOTION FOR FED. R. CRIM. P. 41(g) RETURN OF INFORMATION & REQUEST FOR LEAVE TO FILE ANY RELATED MOTIONS OUT OF TIME FOR GOOD CAUSE**

---

This matter is before the Court Defendants' Joint Motion for Fed. R. Crim. P. 41(g) Return of Information & Request for Leave to File Any Related Motions Out of Time for Good Cause ("Motion"). (ECF No. 132.) For the reasons stated below, the Motion is denied.

## I. BACKGROUND[1]

### A. Calls Provided to ATF Special Agent Pound

In 2019, Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") Special Agent Matthew Pound requested that GEO Aurora Detention Center ("GEO") provide

---

[1] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's pages internal pagination. This factual summary is taken from the parties' briefs and supporting exhibits.

him with all of the jail calls between Spikes and Montoya based on his belief that Montoya was violating her conditions of release by communicating with Spikes. (ECF No. 134-1 at 6.) GEO provided ATF Special Agent Pound a disc labeled "Spikes 5/30-7/16/2019 Phone calls." (*Id.* at 6.) While reviewing the calls, ATF Special Agent Pound realized that he was listening to a privileged call. (ECF No*.* at 2.) This information was disclosed to defense counsel. (*Id.*)

On or about December 31, 2020, Spikes's counsel notified the prosecution that GEO had released three privileged calls between defense counsel and Spikes to law enforcement in this case.[2] (ECF No. 134 at 1.) This information was further raised with the Court at the beginning of the January 5, 2021 evidentiary hearing on Defendants' Joint Motion to Dismiss Indictment or in the Alternative to Suppress Evidence and Request for Oral Argument ("Motion to Suppress").[3] (*Id.*)

Upon learning that a member of the prosecution team had received privileged calls, the Government "instituted measures to prevent the additional members of the prosecution from inadvertently accessing privileged communications," including: (1) establishing a filter team to review the jail calls in the prosecution's possession; and (2) tasking ATF Special Agent Jason Cole to investigate the information received from GEO. (*Id.* at 2.)

---

[2] The Court notes that GEO's Talton Recording System does not record calls between inmates and attorneys when the attorney's phone is registered with the system; however, for reasons that remain unknown to the Court, it appears that Spikes's counsel did not register his phone number in the system from approximately May 2019 until March 2020, which led to Spikes's attorney-client calls being recorded by the system during that time. (ECF No. 134-1 at 2–3.)

[3] Because all parties involved had recently learned of this information, the Court took no

On January 14, 2021, Dawn Ceja, the Assistant Facilitator Administrator at GEO, informed ATF Special Agent Cole that the recorded calls had not been downloaded from the system, which would be the case if the calls were provided to a requesting law enforcement officer. (ECF No. 134-1 at 2.)

After reviewing the jail calls in the prosecution team's possession, the filter team provided all jail calls to defense counsel. (ECF No. 134 at 2.) The Government further provided defense counsel ATF Special Agent Cole's reports of his communications with GEO. (*Id.*)

**B.   Unauthorized Access of Spikes's GEO Calls**

On January 14, 2021, Ceja also informed ATF Special Agent Cole that GEO's internal investigation had uncovered that some of Spikes's other calls with his attorney had been accessed and that the "access appeared to be unauthorized." (ECF No. 134-1 at 2.)

On January 25, 2021, Ceja provided ATF Special Cole with a call log of 9 recorded calls between Spikes and his attorney, which were placed between June 17, 2019 and October 7, 2019. (ECF No. 134 -1 at 5.) In addition to the three calls provided to ATF Special Agent Pound, Ceja also noted that there were additional recorded calls with the attorney's phone number that were marked "Burn/Downloaded" that had not been provided to ATF Special Agent Pound. (ECF No. 134 at 3; ECF No. 134-1 at 5.) The call logs showed that three individuals, Brigitte Dolan, Rene Shook, and Sandra Minker, had accessed and listened to calls between Spikes and his attorney. (ECF No.

---

action on Defendants' allegations during the January 5, 2021 hearing.

134-1 at 6.) ATF Special Agent Cole provided the calls to the filter team, who, in turn, reviewed the communications and provided them to defense counsel.[4] (ECF No. 134 at 3.)

Thereafter, the Government represents that ATF Special Agent Pound

> inquired of both the Aurora and Denver law enforcement personnel involved in this case if they had (1) asked for GEO to provide them with any jail calls of defendant Spikes, (2) asked any GEO employee to access jail calls of defendant Spikes, and (3) received any jail calls from GEO of defendant Spikes. Everyone indicated no in response, including Denver Police Department Sergeant Foster, whose [partner, Brigitte Dolan,] was a long-time employee of GEO but did not work with jail calls and had no involvement in the instant case.

(*Id.* at 4.)

The prosecution team, ATF Special Agent Cole, and the Criminal Chief of the United States Attorneys' Office for the District of Colorado ("USAO") have made repeated efforts to obtain the results of GEO's internal investigation. (*Id.* at 4.)

On March 6, 2021, Spikes and Montoya filed a separate civil lawsuit against numerous defendants, including GEO. *See* Civil Action No. 21-cv-0681-KLM (D. Colo). In that civil action, Spikes brings a claim against GEO based on GEO's recording and unauthorized review of his privileged phone calls with his attorney. (Complaint and Jury Demand at 15, *Spikes et al. v. Car Toys, Inc. et al.*, Civil Action No. 21-0681-KLM (D. Colo. March 6, 2021), ECF No. 1.)

On July 12, 2021, ATF Special Agent Pound informed the Government that Dolan, Sergeant Foster's partner, was one of the four individuals terminated from employment

---

[4] The Government also provided defense counsel with ATF Special Agent Cole's Reports

4

with GEO as part of GEO's internal investigation.  (ECF No. 134 at 4–5.)  Ms. Dolan has retained a lawyer, is appealing her termination, and maintains that she had nothing to do with the jail calls and had no involvement in this case.  (*Id.* at 5.)

On or about June 11, 2021, defense counsel learned that GEO was no longer cooperating with the USAO's investigation, and that GEO had obtained legal counsel.  (ECF No. 132 at 3.)  The Government represents that as of the date it filed its response to the Motion, "the results of the internal investigation have not been provided to the [G]overnment."  (ECF No. 134 at 4.)

**C.    The Motion**

On July 7, 2021, defense counsel requested a telephonic status conference "regarding continuing issues and new information on GEO's recording of attorney-client phone calls as it pertains to this case, including the possibility of additional motions and hearings prior to trial, requests for depositions, SDT's [*sic*], and allowing [Defendants'] forensic expert to have access to [GEO's] phone management system for an analysis of spoliation and destruction of evidence."  (ECF No. 130.)  Because the motions deadline passed in April 2020 (*see* ECF No. 63), the Court directed Defendants to file a motion for leave to file any additional motions (ECF No. 130).

On July 12, 2021, notwithstanding the Court's directive that Defendants *file a motion for leave* to file one or more substantive motions, Defendants filed the Motion requesting the Court issue an Order, pursuant to Federal Rule of Criminal Procedure 41(g), that: (1) orders that all recorded confidential legal communication be returned to

---

of Information on January 14 and February 2, 2021.  (ECF No. 132 at 2.)

defense counsel; (2) orders GEO to disclose its policy regarding surveillance and documentation of legal communication; (3) orders GEO to disclose how recorded legal communication is provided to the USAO or any law enforcement agency; (4) allows the parties "to address other evidentiary matters as they arise in this developing investigation"[5]; and (5) grants Defendants leave to file "any related motions out of time for good cause." (ECF No. 132 at 7.) In support, Defendants state that "counsel for Defendants have a good faith belief that the unauthorized access to Spikes'[s] attorney-client calls, were accessed, provided, and listened to by State law enforcement agencies, and that there is a direct connection to State law enforcement officers and their actions in this case." (*Id.* at 3.) They further suggest that that the events underlying the Motion may give rise to a Sixth Amendment violation. (*Id.* at 5–6.)

On July 15, 2021, the Court directed Defendants to file a reply brief that, among other things, explained their specific factual basis underlying their assertion that State law enforcement was involved in the issues underlying the Motion. (ECF No. 135.)

In their Reply, Defendants state that after Spikes and his counsel had "multiple

---

[5] In the Motion, Defendants contemplate that Rule 41(g) "is the appropriate remedy, albeit partial relief, as obtaining documents, recordings, and reports from GEO will necessitate Court intervention and filings of motions to produce and subpoenas. Including [*sic*] the consideration of appointment of a special master, or a request for the Court to appoint an outside entity to investigate, in consultation with the defense-and prosecution, the conduct of GEO and the recording of legal communications and recommend appropriate remedies to the Court." (ECF No. 132 at 4.)

In the Reply, Defendants further request "the ability to subpoena documents, specifically the internal investigation and related documents that was [*sic*] originally instigated by a grievance filed by Spikes after speaking with Major Garcia," the "ability to conduct sworn criminal depositions of GEO employees past and present," and "the ability to do forensic analysis of call logs digital files and email communications of various involved GEO employees[,] both past and present[,] including Dawn Ceja, Rene Shook, Sandra Minker, Brigitte Dolan, and [Sergeant]

6

and lengthy conversations" about an evidence log, Investigator Eric Dortch issued a supplemental report that "specifically address[ed] issues only raised and discussed during private confidential communications between attorney and client." (ECF No. 136 at 2.) Defendants assert that "it is more probable than not that [Investigator] Dortch, or members of law enforcement in conjunction [*sic*] provided [Investigator] Dortch this privileged information that was never raised by motion, or previously mentioned by motion, or disclosed at any time to the [G]overnment and was miraculously without prompting or knowledge than [*sic*] volunteered and explained by [Investigator] Dortch." (*Id.*)

Defendants further assert that "Spikes informed Mr. Hartford that he filed an internal grievance with GEO after being informed by Major Garcia, an employee at GEO, that officers from [Denver Police Department] and [Aurora Police Department] were listening to his 'attorney conversations'"; that "Spikes was then told by another GEO employee, Ms. Shook, that she 'wouldn't lie to cover up the bad acts of others if questioned by authorities'"; and that Ceja "revealed to [Spikes] that his attorney-calls were being monitored and accessed, and that her GEO credentials were being used to gain unauthorized access to those calls." (*Id.* at 2–3.)

Moreover, after filing the Reply, Defendants contacted the Government regarding Dolan's relationship with Sergeant Foster and stated the following:

> Dolan repeatedly visited with Timothy Spikes while he was in custody at GEO, there should be a log of each visit, as Spikes recalls she signed in and out using a pink pen. Dolan engaged in lengthy conversations with Spikes, including

---

Foster's wife." (ECF No. 136 at 3.)

> asking him detailed information about this case and prying
> into his connection and relationship with Montoya. At the
> time Spikes, while noting her behavior was strange, didn't
> believe anything nefarious was occurring because he wasn't
> aware of the connection with [Sergeant] Foster.

(ECF No. 139-1 at 1.)

On July 26, 2021, the Government filed a sur-reply that attached affidavits signed by Investigator Dortch and Sergeant Foster, stating, *inter alia*, that they did not request Spikes's phone calls from any GEO employees and never listened to Spikes's jail phone calls with his counsel. (ECF No. 139-2; ECF No. 139-5.) Sergeant Foster further stated in his affidavit that he had "absolutely no information provided to [him] regarding any of Mr. Spikes['s] phone conversations or any other conversations, from [his] partner or anyone else," and that he "spoke with [Dolan] regarding any personal conversations she may have had with Mr. Spikes regarding the investigation and she[ ] adequately denied any contact with him where she was ever alone or ever asked him anything about his case." (ECF No. 139-5 at 3.)

## II. LEGAL STANDARDS

### A. The Sixth Amendment

The Sixth Amendment guarantees an accused the right to assistance of counsel for his or her defense. *See United States v. Morrison*, 449 U.S. 361, 364 (1981). This right includes the ability to speak candidly and confidentially with counsel free from purposeful government interference. *See Weatherford v. Bursey*, 429 U.S. 545, 554 n.4 (1977) ("One threat to the effective assistance of counsel posed by government

8

interception of attorney-client communications lies in the inhibition of free exchanges between defendant and counsel because of the fear of being overheard.").

The Government violates a defendant's Sixth Amendment right to effective counsel if it engages in a purposeful intrusion into the attorney-client relationship and the interference prejudices the defendant. *Id.* at 558; *Howell v. Trammell*, 728 F.3d 1202, 1222 (10th Cir. 2013) ("[S]tanding alone, the attorney-client privilege is merely a rule of evidence; it has not yet been held a constitutional right . . . . A violation of the attorney-client privilege implicates the Sixth Amendment right to counsel only . . . when the government interferes with the relationship between a criminal defendant and his attorney." (quoting *Pardington v. Gedan*, 961 F.2d 852, 863 (9th Cir. 1992))). However, the Tenth Circuit has held that prejudice is presumed when "the state becomes privy to confidential communications because of its purposeful intrusion into the attorney-client relationship and lacks a legitimate justification for doing so." *Shillinger v. Haworth*, 70 F.3d 1132, 1142 (10th Cir. 1995).

**B.    Federal Rule of Criminal Procedure 41(g)**

"Persons aggrieved by the wrongful seizure of their property . . . by law enforcement authorities may file a motion for return of property" under Federal Rule of Criminal Procedure 41(g).[6] *United States v. Anh Ngoc Dang*, 559 F. App'x 660, 662 (10th Cir. 2014); *United States v. Giannukos*, 2020 WL 6680384, at *2 (D. Kan. Nov. 12,

---

[6] Prior to the amendment of the Federal Rules of Criminal Procedure in 2002, the substance of Rule 41(g) was contained in Rule 41(e). *See United States v. Copeman,* 458 F.3d 1070, 1071 n.1 (10th Cir. 2006) ("What was formerly Rule 41(e) is now Rule 41(g), with only stylistic changes.").

2020) (Rule 41(g) "governs requests for return of property seized in connection with a criminal investigation").

Under Rule 41(g),

> **Motion to Return Property.** A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

*See also* Fed. R. Crim. P. 41(a)(2) (defining "Property" as "documents, books, papers, any other tangible objects, and information.").

A district court should exercise its equitable power to grant relief only if the Rule 41(g) movant shows "irreparable harm and an inadequate remedy at law." *United States v. Shigemura*, 664 F.3d 310, 312 (10th Cir. 2011) (quoting *Copeman,* 458 F.3d at 1071).

## II. ANALYSIS[7]

### A. Whether the Motion is Timely

After careful consideration of the parties' briefs and the evidence attached thereto, the Court concludes that Defendants have failed to demonstrate that they should be

---

[7] While the troubling problems at GEO appear to relate to both attorney-client calls provided to ATF Special Agent Johnson and other calls that were improperly accessed, the Government states—and Defendants do not dispute—that the problems at issue in the Motion relate solely to the calls that were improperly accessed at GEO. (ECF No. 134 at 2 (representing that defense counsel "informed AUSA [Thomas] Minser that the issue with GEO was not the calls provided to [ATF Special Agent Pound], but rather pertained to other calls they alleged to have been released to law enforcement"); *see id.* ("To date, [ATF Special Agent] Cole's investigation confirmed that the allegations currently at issue before the Court do not involve jail calls previously provided to [ATF Special Agent Pound] in 2019").) Accordingly, the Court will confine its analysis to the improperly accessed calls.

10

permitted to file out-of-time motions relating to the unauthorized access of Spikes's calls.[8] Critically, Defendants have been aware that there may have been unauthorized access of Spikes's attorney-client communications since at least January 2021. (ECF No. 134-1 at 2; ECF No. 134 at 3.) Nonetheless, they waited *nearly six months* to seek the opportunity to serve subpoenas, conduct depositions, and engage in forensic analysis.

To be sure, it appears that part of Defendants' delay in filing the Motion is attributable to their efforts to obtain additional information from GEO. (*See* ECF No. 132 at 2–3.) However, in the Court's view, Defendants had ample information that should have put them on notice of the potential need to obtain additional relief well before July 2021.

For example, Defendants had enough information regarding the allegations at GEO to file a separate civil action relating to GEO's recording and unauthorized review of his privileged phone calls with his attorney by March 6, 2021. (Complaint and Jury Demand at 15, *Spikes et al. v. Car Toys, Inc. et al.*, Civil Action No. 21-0681-KLM (D. Colo. March 6, 2021), ECF No. 1.) Despite knowing that this case has been set for trial beginning on August 16, 2021, Defendants waited *four additional months*—until July 7,

---

[8] The Court notes that Defendants have styled the Motion as a "Joint Motion" notwithstanding the fact that defense counsel is unaware of any specific case law determining that a defendant has the right to challenge the purported intrusion on a co-defendant's privileged communications. (ECF No. 136 at 5.) Defense counsel is again cautioned that they *may not* file joint motions unless each defendant has an independent basis and standing to do so. Defense counsel's cavalier disregard of the Court's previously stated disapproval of the informality of counsel's approach to matters of joint representation and the submission of joint filings in this case is troubling.

11

2021—to alert the Court that they would like to pursue discovery in this case relating to the events underlying the Motion.

Accordingly, the Court concludes that the Motion is untimely.

## B. Whether Defendants Have Demonstrated Good Cause

However, even if Defendants had not unreasonably delayed their filing of the Motion, the Court finds that Defendants have failed to demonstrate that they will be able to: (1) assert a viable Sixth Amendment violation, or (2) demonstrate that they are entitled to relief under Rule 41(g), such that there is good cause to allow Defendants to file related motions. In particular, the Court finds that Defendants have failed to come forward with any credible evidence that members of the prosecution team purposefully accessed Spikes's attorney-client communications.

### 1. Whether Defendants Have Credibly Alleged a Sixth Amendment Violation

As part of the Government's investigation, ATF Special Agent Cole specifically asked Aurora and Denver law enforcement personnel involved in this case if they had asked GEO to provide them with Spikes's attorney calls, asked GEO employees to review Spikes's calls, or received any of Spikes's jail calls. Everyone indicated that they had not done so. (ECF No. 134 at 4.)

Defendants have failed to come forward with any credible evidence demonstrating that, notwithstanding their representations to ATF Special Agent Cole, one or more members of State law enforcement were involved in the unauthorized access of Spikes's privileged calls.[9] Without such evidence, Defendants have failed to demonstrate that

---

[9] Defendants clarify that they are not alleging that the USAO had possession or access to

their Sixth Amendment rights may been implicated.[10]  *See Howell*, 728 F.3d at 1222 ("A violation of the attorney-client privilege implicates the Sixth Amendment right to counsel only . . . when the government interferes with the relationship between a criminal defendant and his attorney." (quoting *Pardington*, 961 F.2d at 863)).

For example, Defendants claim it is "more probable than not" that Investigator Dortch must have had some involvement in accessing Spikes's privileged phone calls based on the fact that he issued a supplemental report regarding an evidence log on October 21, 2020 after Spikes and his counsel engaged in several conversations regarding this evidence.  (ECF No. 136 at 2.)  However, Defendants neglect to mention that Investigator Dortch issued his supplemental report before the then-scheduled October 21, 2020 hearing on Defendants' Motion to Suppress.  (*See* ECF No. 90.)  In the Court's view, and contrary to Defendants' rampant speculation, the most likely explanation is that Investigator Dortch issued the supplemental report after noticing a potential deficiency in the evidence while preparing for the Motion to Suppress hearing.

Moreover, Investigator Dortch provided a sworn affidavit denying Defendants' allegations.  (ECF No. 139-2 ("I have never listened to jail phone calls from the GEO facility in relation to Defendant Spikes and Mr. Hartford" . . . "I have never had a conversation with anyone regarding jail calls between Defendant Spikes, Defendant

---

these calls.  (ECF No. 136 at 4.)

[10] Defendants cite no case law in which courts have determined that a defendant's Sixth Amendment rights were violated when jail personnel accessed a defendant's privileged phone calls but did not pass those phone calls (or the information contained therein) to a member of the prosecution team.  This distinction is particularly acute in this case because GEO is a private corporation contract facility.

Montoya or Mr. Hartford".).) Accordingly, Defendants' speculation regarding Investigator Dortch fails to rise to the level of a credible allegation of law enforcement intrusion into Spikes's attorney-client conversations, as is required to give rise to a Sixth Amendment violation. *See Weatherford*, 429 U.S. at 558.

Nor do Spikes's representations that: (1) Major Garcia[11] told him that officers from Denver Police Department and Aurora Police Department were listening to his "attorney conversations"; or (2) Dolan repeatedly visited Spikes at GEO and asked him questions regarding his case, change the Court's analysis.[12] As an initial matter, the Court notes that Spikes's purported conversation with Major Garcia was raised for the first time in Defendants' Reply. (ECF No. 136 at 2.) It is unfathomable to the Court that if this conversation had in fact occurred, Defendants would not have *immediately* sought relief and introduced the Motion with Spikes's account of this conversation.[13] Moreover, the Court would have expected that this conversation would have been recounted to ATF Special Agent Cole so that he could investigate such a serious allegation; however, ATF Agent Cole did not investigate or speak with Major Garcia. (ECF No. 139 at 3.)

It likewise strains credulity (to say the least) that Spikes would not have been immediately suspicious if *any* GEO employee began repeatedly visiting him and asking

---

[11] Defendants do not provide Major Garcia's first name. (ECF No. 136 at 2.)

[12] The other allegations identified in the Reply do not specifically involve state law enforcement. (*See* ECF No. 136 at 3.) As such, they do not give rise to a possible Sixth Amendment violation.

[13] In the Motion, Defendants represented that, aside from Ceja's reports in early January 2021 that someone may have accessed Spikes's privileged calls without authorization, "[n]o other information was provided to, or known by, Defendants at that time." (ECF No. 132 at 2.) Defendants' new allegation surrounding Major Garcia's conversation with Spikes seems to

him detailed questions about his case and relationship with Montoya.  The Court further notes that Sergeant Foster has submitted an affidavit, in which he denies any involvement with the allegations in this case and denies that Dolan ever asked Spikes anything about his case.  (ECF No. 139-5 at 3.)

At bottom, in reviewing the evidence submitted in support of the Motion, the Court notes that it has received: (1) affidavits from law enforcement personnel involved in this case adamantly denying any involvement in the unauthorized access of Spikes's privileged phone calls, and (2) reports from ATF Special Agent Cole's detailed investigation that has not revealed any wrongdoing by state law enforcement.  Despite ample opportunity to do so, Spikes has failed to support his allegations with any evidence of his own and has decided not to produce his own affidavit signed under the penalty of perjury that recounts his conversations with GEO personnel.

After careful consideration of Defendants' arguments and the evidence submitted by the Government, the Court concludes that Defendants have failed to plausibly allege a Sixth Amendment violation.  In making this determination, the Court focuses on the fact that Defendants provided only unsupported—and dramatically shifting (and thus less than credible)—attorney argument that fails to convince the undersigned that there is a genuine possibility that State law enforcement played any role in GEO's unauthorized access of Spikes's privileged calls.  As such, the Court finds that Defendants have failed to allege a plausible Sixth Amendment violation to justify their request for further discovery and relief.

---

contradict this representation.

2.      <u>Whether Defendants Have Shown Entitlement to Relief Under Rule 41(g)</u>

The Court finds that Defendants have failed to establish that they are entitled to relief under Rule 41(g).  As explained above, Defendants have failed to come forward with any credible evidence demonstrating that law enforcement seized any information from Spikes or that the Government has any interest in any property or information belonging to Spikes.  *See Anh Ngoc Dang*, 559 F. App'x at 662 (recognizing that Rule 41(g) relief is for "[p]ersons aggrieved by the wrongful seizure of their property . . . by law enforcement authorities"); *United States v. Copeman*, 458 F.3d 1070, 1072 (10th Cir. 2006) ("property seized by and held by state law enforcement not in constructive possession of the United States for Rule 41(g) purposes unless it is being held for potential use as evidence in a federal prosecution . . . . Absent such use, the United States has no interest in the property."); *see also United States v. Solis,* 108 F.3d 722, 722–23 (7th Cir.1997) (denying Rule 41(e) motion where there was no evidence of federal possession or federal direction of state seizure); *United States v. White,* 718 F.2d 260, 261 (8th Cir. 1983) (denying Rule 41(e) motion where United States did not have possession of property).

Moreover, Defendants have failed to show, as is required by Rule 41(g), that there is an inadequate remedy at law that justifies equitable relief.  *Shigemura*, 664 F.3d at 312 (recognizing that a district court should exercise its equitable power to grant relief only if the Rule 41(g) movant shows "irreparable harm and an inadequate remedy at law").  After all, Defendants have filed a separate civil lawsuit against GEO regarding the unauthorized access of Spikes's privileged communications and will have ample

opportunity to conduct discovery in that proceeding.

Accordingly, the Motion is denied to the extent they seek relief under Rule 41(g).

### III.  CONCLUSION

For the reasons set forth above, the Court ORDERS that Defendants' Joint Motion for Fed. R. Crim. P. 41(g) Return of Information & Request for Leave to File Any Related Motions Out of Time for Good Cause (ECF No. 132) is DENIED.

Dated this 3rd day of August, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge